42
1

```
 1                UNITED STATES DISTRICT COURT
            IN THE EASTERN DISTRICT OF MICHIGAN
 2                     —    —    —

 3   ANN MARIE STINNETT,

 4              Plaintiff,

 5     vs.                          Case No. 10-15043

 6   BROOKS KUSHMAN, P.C. & MARK A.   Hon. Paul D. Borman
     CANTOR,
 7

 8              Defendants.
     _____/

 9                  MOTION HEARING

10   BEFORE THE HONORABLE PAUL D. BORMAN

11      Detroit, Michigan • Tuesday, December 28, 2010

12

     APPEARANCES:
13
     For the Plaintiff:   ANN MARIE STINNETT (P66209)
14                        The Stinnett Law Group
                          101 W. Big Beaver Rd., Ste. 1400
15                        Troy, MI  48084
                          (248) 687-1536
16

17   For the Defendants:  DANIEL J. BRETZ (P34334)
                          TRACY A. LEAHY (P39478)
18                        Clark Hill, P.L.C.
                          500 Woodward Ave., Ste. 3500
19                        Detroit, MI  48226
                          (313) 365-8356

20   Also present:        Earl LaFontaine

21

22

23

24      To obtain a copy of this official transcript, contact:
           Robert L. Smith, Official Court Reporter
25        (313) 964-3303 • rob_smith@mied.uscourts.gov
```

FILED

MAR 07 2011

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

1    Detroit, Michigan

2    December 28, 2010

3    at about 10:03 a.m.

4                        —    —    —

5            (Court, Counsel and parties present.)

6            THE CASE MANAGER:  All rise.

7            Court is in session, Judge Borman presiding.

8            THE COURT:  Okay, please be seated.  This is

9    Case No. 10-15043, Stinnett vs. Brooks Kushman, P.C. and

10   Mark Cantor.

11           Will the parties please identify themselves for the

12   record, beginning with the Plaintiff.

13           MS. STINNETT:  Your Honor, my name is Ann Marie

14   Stinnett, and I represent the Plaintiff in this case.

15           THE COURT:  Okay.  And for Defendants.

16           MR. BRETZ:  Daniel Bretz and Tracy Leahy on behalf

17   of the Defendants.  I'm here with Earl LaFontaine who is a

18   shareholder in the firm Brooks Kushman.

19           THE COURT:  Okay.  Have a seat.

20           What I have before me, initially the case was filed

21   and then I believe it was -- was it Wednesday or Thursday

22   that the Defendants came with the motion?

23           MS. LEAHY:  Wednesday.

24           MR. BRETZ:  Wednesday, Your Honor.

25           THE COURT:  It was late in the day, and at that

SEALED PROCEEDINGS

1   time I tried to reach Ms. Stinnett and was unable to.  I did

2   issue just a temporary order to seal pending a hearing, and

3   the next morning, Thursday morning, I called Ms. Stinnett and

4   spoke with her and set the hearing date that was

5   accommodating for everybody here.  So with that history then

6   we will proceed with the Defendants' motion.

7           MR. BRETZ:  Thank you, Your Honor, and thank you

8   for hearing this motion on an expedited basis.  As I said, my

9   name is Daniel Bretz.  I represent the Defendants.

10          Just some brief background, Your Honor.

11  Brooks Kushman is an intellectual property law firm.  It has

12  about 70 attorneys.

13          THE COURT:  A little too fast because the court

14  reporter has to take down every word, okay.

15          MR. BRETZ:  I'm sorry.  The Plaintiff was employed

16  as an associate attorney in the firm for about five

17  and-a-half years from August of 2003 to February of 2009.  In

18  February of 2009 as an intellectual property firm the firm

19  was faced with the potential bankruptcy of its two major

20  clients, General Motors and Lear Corporation.  It went

21  through a painful reduction in force.  Nine employees in

22  total were eliminated from the workforce, two of them were

23  attorneys, and one of them was Ms. Stinnett, and one was a

24  male associate in the firm, and they were selected for the

25  reduction in force based on their production and their

1  financial contribution, their hours, to the firm.

2        Following that reduction in force, five of those

3  nine employees went to the EEOC en masse and filed charges.

4  Those were all resolved through the EEOC conciliation

5  process.  Following the resolution of those five charges,

6  Ms. Stinnett filed an EEOC charge as well.  She filed hers

7  October 5, 2009.

8        The EEOC issued a dismissal of that charge with a

9  finding it was unable to conclude based on the information

10 presented that there was any violation of Title 7.  Four

11 months later, although there is a 90-day right-to-sue letter

12 issued, a month beyond the 90 days, four months later

13 Ms. Stinnett filed the instant lawsuit.  And the lawsuit

14 is -- what we are here on today contains 204 paragraphs and

15 8 counts, and they are under -- the counts are under state

16 and federal law for sex harassment, sex discrimination,

17 retaliation and violation of the equal pay act.  Those four

18 claims multiplied by the state and federal law result in

19 eight counts.

20        We are here today because contained in those

21 204 paragraphs are allegations that are so far outside of the

22 bounds of proper pleading that it is transparent that their

23 inclusion was just an attempt to embarrass, if not humiliate

24 and destroy, the law firm and the individuals who work there.

25 And we have identified the offending paragraphs in our

1   pleadings, and we are here today, Your Honor, first on the

2   motion to strike those irrelevant, immaterial and frankly

3   scandalous accusations that have nothing to do with

4   Ms. Stinnett's claims.

5        We are here under Federal Rule 12(f) which allows

6   the Court to strike those paragraphs based on those

7   standards.  The first series of paragraphs I want to deal

8   with are 43 through 52, and then again 105 through 114 and

9   the attached Exhibits C, D and E.  So those paragraphs and

10   those exhibits deal with an attempt to raise accusations by

11   third parties who are unnamed and have submitted unsworn

12   statements to the EEOC, and Ms. Stinnett is trying to include

13   those into this case when those experiences of those

14   individuals have nothing to do with her.

15        THE COURT:  One of the arguments that the Plaintiff

16   makes is that to show a continuing environment of harassment

17   that the law allows or, indeed, requires showing this

18   historical situation relating to other individuals, and

19   therefore it is appropriate to -- I might as well use the

20   microphone -- that it is appropriate and necessary to include

21   that information.

22        MR. BRETZ:  Several responses, Your Honor.  First,

23   the allegations of these others are all time barred.

24   Secondly, in order to make them relevant or material to her

25   claims she has to have stated a viable claim for sexual

SEALED PROCEEDINGS

1   harassment, and it is that point that I want to address here

2   today.  Her claim for sexual harassment on the face of the

3   pleadings is not viable.  Her claim for sexual --

4           THE COURT:  Is this a motion to dismiss that you

5   are making?

6           MR. BRETZ:  No, Your Honor, but it is a motion to

7   strike the immaterial pleadings, the immaterial references in

8   a Complaint.  We can -- we have not yet been served with the

9   Complaint but as soon as we are we will be filing a 12(b)(6)

10   motion.

11          THE COURT:  You don't have a copy?

12          MR. BRETZ:  I have a copy.  I'm willing to accept

13   service.  That's not an issue, but we don't have a timing set

14   up yet for a 12(b)(6) motion.

15          THE COURT:  Okay.

16          MR. BRETZ:  And I do acknowledge that we are asking

17   the Court to look forward a bit, but your question, I think,

18   anticipates that, is this evidence sufficient to come in or

19   allowable in this case.

20          THE COURT:  I'm not ruling on the evidentiary

21   issue, I'm just saying in the Supreme Court precedent with

22   regard to harassment and retaliation, are these types of

23   claims relevant?

24          MR. BRETZ:  Yes.  The Supreme Court in Sprint vs.

25   Mendelsohn ruled that me-too evidence, which I think this

1  evidence fits in that category, is not per se admissible or

2  inadmissible, the Court has to look at Rules 401 and Rule 403

3  of the Federal Rules to make a case by case determination.

4  So that is a future state that we may end up at, but what I'm

5  asking the Court to do is to look at the face of the

6  pleadings today.  There is no need for 204 paragraphs with

7  all of these scandalous accusations for her to state a viable

8  claim.

9          Secondly, we think that --

10         THE COURT:  I guess it is like a slippery slope

11  here, if you're saying that there is enough to submit a

12  viable claim without these then, except for the statute of

13  limitations arguments, then are you saying that this -- the

14  Complaint is not subject to 12 --

15         MR. BRETZ:  No, that's not --

16         THE COURT:  -- motion to dismiss because if you're

17  saying that it is and it is not just limited to the statute

18  of limitations issue then --

19         MR. BRETZ:  No.  What I'm trying to say, Your

20  Honor, inarticulately --

21         THE COURT:  No, you're doing fine.

22         MR. BRETZ:  -- is that for her to submit a notice

23  pleading she doesn't need to attach all of this me-too

24  evidence.

25         We can deal with that as evidence in discovery.  If

1    she survives a 12(b)(6) it doesn't need to be in a Complaint

2    for her to file a Complaint in this Court.  That's what I'm

3    trying to say.

4         Looking at what she has alleged in terms of sexual

5    harassment the question is does this me-too evidence have any

6    nexus to her allegations.  We submit on the face of the

7    pleadings it does not.  Her allegations, and we have recited

8    those in the brief, are completely non-sexual in nature.  Her

9    allegations which she labels sexual harassment are, to put a

10   label on it, Your Honor, are truly petty workplace disputes.

11   She says that in 2004 a time-barred event occurred where the

12   senior partner put his arm around her at a firm retreat

13   standing alone.  In 2006 a senior partner invited her to

14   accompany him to the auto show, she said no, that was the end

15   of it.  In March 2006 she was, quote, ordered to move her

16   office next to a senior partner.

17        THE COURT:  Whom she had previously told people at

18   the firm she didn't want to be near the guy because of

19   previous conduct that made her uncomfortable.

20        MR. BRETZ:  Previous conduct that was never sexual

21   in nature.  The face of the Complaint there is no allegation

22   of request for sexual favors, comments of a sexual nature,

23   innuendo, attempts to come on to her, all of this is neutral

24   conduct.

25        Now, she can go forward with those allegations and

1    she will be responsible to meet or exceed the standards for

2    12(b)(6) and Rule 56, but these -- what I'm trying to say is

3    these accusations or allegations of others, some of which

4    occurred in 1994, some of which occurred in 1998, have

5    nothing to do with the accusations she has raised.  She does

6    not claim she was ever aware of the experiences of others.

7    She does not claim she witnessed them.  She does not claim

8    that they were ever brought to her attention.  She does not

9    claim she ever complained about them.

10         THE COURT:  Isn't there Sixth Circuit precedent

11   that says that these types of matters are relevant to claims

12   now?

13         MR. BRETZ:  There is Sixth Circuit precedent that

14   says they can be in a proper case.

15         THE COURT:  Right.

16         MR. BRETZ:  And there is precedent in Sixth Circuit

17   and elsewhere that excludes this evidence.  In fact, I think

18   there is an opinion I have of yours where you excluded

19   evidence in a discrimination case of me-too type --

20         THE COURT:  That was probably before the more

21   recent Sixth Circuit.  I mean, I'm not trying cover myself --

22         MR. BRETZ:  No.

23         THE COURT:  -- but I think my decision was previous

24   to the Sixth Circuit opinion that said, you know, that is

25   appropriate.

1         MR. BRETZ:  Well, it is safe to say, Your Honor,

2  there is no bright line one way or the other.

3         THE COURT:  Right.

4         MR. BRETZ:  It is a case by case and it is left to

5  the Court's discretion under the Federal Rules of Evidence.

6  So back to where we are today.

7         THE COURT:  But you say there is nothing sexual in

8  the Complaint, and I don't know if we are arguing a motion to

9  dismiss, but you're saying that paragraph 14 where he came --

10  in 2004 the allegation is that the individual came up behind

11  her and forcibly put his arm around her shoulders and brought

12  her within inches of his face, she took his arm away, backed

13  away and said keep your hands to yourself in which the

14  allegation is at that point the Defendant laughed as did a

15  co-shareholder of the firm.

16         Then the issue about the lost papers, you know,

17  that may or may not be building on that, but then you have

18  the situation, you know, where the Defendant allegedly said,

19  you know, come on with me to the auto show and she said no.

20  And then combining with that the office location matter

21  where, you know, is there something about that that again

22  taken in the light, although we are not dealing with a motion

23  to dismiss, but this is not neutral conduct and so to that

24  extent it begins to have some legs, as to where it takes you,

25  that's a question going further in the Complaint, but then as

1    you point out we have the unsworn Exhibits C, D and E, and

2    then we go back to the question of the conduct at the firm

3    that resulted in her dismissal.

4           Your argument seems to be that this other conduct,

5    first of all, may not be admissible.  Second, that it

6    certainly is not involving her as to C, D and E, and to the

7    extent that you dispute it that you claim that it is

8    scandalous or not appropriate.  Other issues I guess that

9    would relate is Rule 8, whether you attach evidentiary

10   material to a Complaint or not, and in addition to Rule 12.

11          MR. BRETZ:  That's right, you have summarized our

12   positions correctly.  As to her allegations, just to clarify

13   my points, it is -- the allegations that she makes that the

14   Court recited in 2004 and 2006 are time barred, first of all.

15   Secondly, they are not severe or pervasive.  They are

16   isolated instances.  And thirdly, looking at them even in a

17   light most favorable, I would submit they are not sexual in

18   nature.  There is no evidence that --

19          THE COURT:  The light most favorable to who, you or

20   her?

21          MR. BRETZ:  To her.

22          THE COURT:  Okay.

23          MR. BRETZ:  Finally she never complained about any

24   of this despite receipt of the firm policies and handbooks.

25   So that's what I'm saying, looking at it in totality of her

1   claim of sexual harassment, how does she then reach from

2   those very empty allegations, in my opinion, to reach out to

3   other's experiences, time barred, unsworn and unrelated and

4   unknown to her.  I think that is the kind of case where a

5   court, if presented with an evidentiary requirement or

6   ruling, would say, no, that does not connect up with your

7   case, but in this situation when we are talking about those

8   pleadings and a Complaint there is no proper purpose at this

9   point to include those allegations.  Let us deal with the

10   12(b)(6) motion, let us deal with a Rule 56 motion, let's

11   deal with motions in limine and we can address those other

12   issues, but they are improper certainly at this point.

13          We have submitted an affidavit of Mr. LaFontaine,

14   and he's here today if the Court wants to question him, that

15   this has already had an impact on the firm.  It has been

16   picked up on the Internet.  It has gone viral.  There's phone

17   calls being made to the firm by reporters, by competitors of

18   the firm, by clients of the firm.  There's indication that

19   the firm's potential to obtain new business, as testified to

20   in Mr. LaFontaine's declaration, are in jeopardy.  This is

21   all based on this highly tangential, I would submit totally

22   impermissible, evidence that has nothing to do with the

23   Plaintiff.

24          Finally, what is the harm to the Plaintiff to

25   striking or sealing the record at this point?  I would submit

SEALED PROCEEDINGS

1   that there is none.  This is not a case of public concern.

2   This is not a case where a government agency has decided to

3   prosecute an entity.  These are private parties who are going

4   to engage in private discovery on these issues.  In fact, the

5   EEOC chose not to prosecute this case indicating that there

6   is no public interest at play here.  We have attached the

7   Flag case from Judge Rosen where he goes through a very

8   lengthy --

9           THE COURT:  Yes, he does.

10          MR. BRETZ:  -- analysis --

11          THE COURT:  Excuse me.  You don't need to be here.

12   Thanks.

13          (Court security officer was excused at 10:20 a.m.)

14          MR. BRETZ:  -- of the court's power and discretion

15   to seal a record, and I would submit that case certainly has

16   more --

17          THE COURT:  That obviously deals with discovery in

18   a case that is filed.  In this case we are not dealing with

19   discovery, does that make any difference, or are we dealing

20   with the same issues?

21          MR. BRETZ:  No, but in terms of the principles of

22   law I think we are dealing with the same issues, in terms of

23   sealing a record, in terms of sealing discovery proceedings,

24   in terms of determining at this point in the case what is

25   necessary and not necessary for the case to proceed.  I think

SEALED PROCEEDINGS

1    those milestones that Judge Rosen laid out are apt here, that

2    this is not an opportunity to libel individuals through

3    pleadings.  It is an opportunity for Plaintiff to have her

4    grievance heard, and I would submit these extraneous matters

5    have no relevance and no proper purpose for her grievance to

6    be heard.

7            THE COURT:  In the briefing obviously we think

8    about and indeed follow the Sixth Circuit precedent in Brown

9    and Williamson Tobacco vs. The Federal Trade Commission and

10   in Re:  Knoxville Newspapers.  So where does that take us in

11   terms of you arguing that because it doesn't involve smoking,

12   health issues, that it is a different --

13           MR. BRETZ:  Essentially, Your Honor, I think

14   that's -- to amplify, those cases involve matters of public

15   concern and prosecutions by government agencies.  The FDIC

16   was involved in the one case, in the Knoxville case, and

17   newspapers sought to have the government's decision to seal

18   the record reviewed.

19           THE COURT:  But the language is pretty broad like

20   in Knoxville, the 1983 decision, only the most compelling

21   reasons can justify the non-disclosure of judicial records.

22           MR. BRETZ:  Right.  Remember our motion, the thrust

23   of our motion, first is to strike, which is not the subject

24   of Knoxville and Brown.  Second is for a protective order,

25   again, which is not the subject of Knoxville and Brown, and I

15

1   would submit the Flag case properly addresses the protective

2   order issue.  And, yes, thirdly, is to seal what is remaining

3   until the Court has an opportunity to make a decision.  In

4   other words, we are sealing the case through the discovery

5   phase.  It is really more akin to a protective order under

6   Rule 26, and as Judge Rosen recognized in distinguishing

7   Knoxville and Brown, discovery proceedings are not public,

8   especially involving private parties.  The public does not

9   have a right to know what is said at depositions.  The public

10  does not have a right to know what is exchanged in

11  interrogatory information.  That's because the parties -- the

12  discovery rules are liberal and the parties have an

13  opportunity to present to the Court what should or should not

14  come into evidence.  So we are saying given the nature of

15  these allegations, given the irreparable harm that has and

16  has the strong potential to occur based on these allegations

17  we would request that the Court seal the record until the

18  Court has an opportunity to make a decision.

19          In the Brown case, as Judge Rosen pointed out, that

20  seal lasted throughout the District Court proceedings and on

21  into the appeal phase, and that's where the Sixth Circuit

22  drew the line and said, no, you're trying to seal information

23  that went into the court's decisions that are now before us

24  and we are not going to allow that.  I'm not asking for that.

25  I'm asking for a seal until the opportunity -- the Court has

1   the opportunity to make those decisions.

2           THE COURT:  Okay.  Let me hear from the Plaintiff,

3   and then I will call you back since you're the moving party.

4           MR. BRETZ:  Just one --

5           THE COURT:  Sure.

6           MR. BRETZ:  For clarity, I apologize, there are

7   certain other paragraphs that we have asked to be sealed.

8           THE COURT:  Right, right.

9           MR. BRETZ:  One deals with a highly confidential

10  settlement which I believe was a matter in front of this

11  Court that --

12          THE COURT:  No, it was the Expeditors case.

13          MR. BRETZ:  I'm sorry, a different case.

14          THE COURT:  I didn't have that other one, it was

15  probably a court in another district.

16          MR. LaFONTAINE:  California.

17          MR. BRETZ:  Yeah.  Those allegations in the

18  Complaint about that settlement have no bearing to anything

19  and should be stricken.  We do not want to jeopardize that

20  settlement.  The law firm does not want to jeopardize that

21  settlement for purposes of its client, so those paragraphs we

22  would ask to be struck as well, and those are 100 and 101.

23          Also, the references to what went on at the EEOC in

24  terms of settlement, those are not admissible and not

25  relevant, those are 123 and 24.

SEALED PROCEEDINGS

1          Finally, I apologize it is not in our motion, we

2    would ask to strike paragraphs 29 through 32 about theft,

3    alleged theft, of documents by one of the attorneys in the

4    firm.  Again, there is no purpose for that other than to

5    defame or libel him through what would otherwise be

6    privileged pleadings.

7          THE COURT:  Okay.  That deals with Mr. -- well,

8    that other individual --

9          MR. BRETZ:  Yes.

10          THE COURT:  -- at the firm?

11          MR. BRETZ:  Yes, 29 through 32.  Thank you, Your

12    Honor.

13          THE COURT:  Okay.  Let me get a sip of water and

14    then we will continue.  Good morning.

15          MS. STINNETT:  Good morning, Your Honor.

16          I just have a few points that I would like to make

17    in response.

18          THE COURT:  Okay.

19          MS. STINNETT:  And the first point that I would

20    like to make would be that the harm that they are saying that

21    has occurred, I believe that there are others who are still

22    at the firm and others who have recently left the firm where

23    this case I think should be available to the public so that

24    they are aware of what is going on, and especially since I

25    learned yesterday when I received their reply it appears that

1   other clients are now interested in the case, and so that's a

2   reason that I believe that this case should be open to the

3   public in accordance --

4           THE COURT:  Is it open?  In other words, what is

5   the status?  I saw a website called 360.  Is that -- and

6   apparently there is -- and I didn't have the money to get it

7   all, but in the response by the Defendants they gave me the

8   whole story that is on 360 so --

9           MS. STINNETT:  Yes, Your Honor.  I got a phone call

10  Monday -- I had filed the lawsuit late Sunday -- from a lady

11  by the name of Melissa Lipman.

12          THE COURT:  Could you spell the last name just to

13  help the court reporter?

14          MS. STINNETT:  L-I-P-M-A-N.

15          THE COURT:  Thank you.

16          MS. STINNETT:  And she asked me for any comments

17  that I might have.  I was quite surprised to have such a

18  quick response to the Complaint that I had just recently been

19  filed, and she had told me that her deadline for this article

20  was Monday at 5:30 p.m., and I gave her my comments, I just

21  made a couple of them, as well as Brooks Kushman also had

22  some comments to be included in the article, and that was it.

23  I guess after 5:30 p.m. on Monday my husband told me that the

24  article is already out, and when I -- I did do a temporary

25  seven-day trial of Law360 just to get the article.

1    THE COURT:  So you did?

2    MS. STINNETT:  Yes, Your Honor, and when I had done

3 that I had learned that the Complaint, that is my Complaint,

4 is actually posted on the Law360 website, so it is as of

5 Tuesday of last week it was on there.  I don't know if

6 anything has changed, but if you, I guess, subscribe you are

7 able to get a copy of the Complaint.

8    THE COURT:  Well, no, I received a full copy

9 through the Defendants included as an exhibit in their sealed

10 reply, right?

11    MR. BRETZ:  Correct.

12    THE COURT:  Right.

13    MS. STINNETT:  So that's sort of, I guess, the

14 story behind there.  I have not gone to any media or anything

15 to date.  I don't see the need to do that at this point, but

16 I do understand that the nature of the case is such where the

17 news media may be interested in it.

18    THE COURT:  Okay.

19    MS. STINNETT:  I just briefly want to address one

20 point that was made earlier in the beginning having to do

21 with receiving the right-to-sue letter.  There was a mistake

22 at the EEOC with my address.  I had gone to the EEOC on

23 October 5th, basically I had spoke to one of the intake

24 questionnaire supervisors, she had written my, what they call

25 a charge, and had my correct address and everything on there.

1  Subsequently I would have to repeatedly check with the EEOC

2  probably every couple months just to get a status of where

3  the case is.  They never notified me.  I was always checking

4  up on them.  I had checked up on them on November 17th

5  because I still hadn't heard anything, and I was informed

6  that about 92 days ago they had sent me a right-to-sue

7  letter, and I said, well, I never received that.  She said,

8  well, is this your address, and she read off the address that

9  the letter was sent to, and it was not, it was off by a

10 couple digits.

11      At that point they faxed me like within five

12 minutes a copy of the right-to-sue letter.  They told me that

13 they were putting the right-to-sue letter in the mail.  I

14 asked is there anything I can do because I know the opposing

15 side is going to make an issue of this, is there anything

16 that I can do, can you document that you didn't send it to

17 the correct address?  She said, no, we are not going to do

18 that.

19      The very next day I put forth a congressional

20 inquiry into the matter.  I went to Senator Carl Levin's

21 office and just dropped off a packet, which I have a copy of

22 if you would like to see it, and it just basically says that

23 my address is this and they had my correct address on

24 October 5th, somewhere in the computer system something

25 happened to where they sent the letter to an incorrect

1    address.  I received a phone call back from Senator Levin's

2    office saying that the time limit starts when the plaintiff

3    receives the letter, and since you received it on

4    November 17th, as the fax is shown, that that is when your

5    time clock started.  So I just wanted to clear that up in the

6    case.

7              THE COURT:  So he could be a witness here?

8              MS. STINNETT:  Well -- I'm sorry, Your Honor.

9              THE COURT:  Senator Levin, okay.

10             MS. STINNETT:  So that's a little bit of the

11   background on that.

12             I just wanted to say that I keep hearing about how

13   things are time barred, and I quoted a case from the United

14   States Supreme Court that talks about the workplace

15   environment and how you sort of have to allege other things

16   according to the law in order to even be able to prevail

17   under the law, and it does say that other instances --

18             THE COURT:  Why don't you just mention the case

19   just so we are all on the same page?

20             MS. STINNETT:  Sure.  It is National Railroad, it

21   is on page 7 of my opposition.

22             THE COURT:  Okay.

23             MS. STINNETT:  National Railroad Passenger

24   Corporation --

25             THE COURT:  Otherwise known as Amtrak.

1          MS. STINNETT:  -- vs. Morgan.

2          THE COURT:  M-O-R-G-A-N.

3          MS. STINNETT:  I have the cite if you would like

4     that.  It is 536 U.S. 101, dated 2002.

5          THE COURT:  Right, okay.

6          MS. STINNETT:  Basically it just says that the

7     incidents that have occurred even prior to the 180- or

8     300-day time limits are all considered one complete, I guess,

9     one component, so I am able to include things that sort of

10    paint the picture of it because they said inherently

11    workplace harassment it doesn't occur -- it is not a one-time

12    incident, it is a repeated sort of -- that's sort of the

13    nature of it, and so that's why they allow you to plead it

14    that way.

15         THE COURT:  Let me ask a question.  There's two

16    categories of matters that the Plaintiff -- I'm sorry, the

17    Defendants have concern about, the moving party, one is the

18    affidavits of -- not the affidavits, strike that, the

19    statements of C, D and E which are not sworn and which are in

20    the nature of similar acts under 404(B) but that you also

21    say, well, they are part of the atmosphere.  That's something

22    the Court notes that Rule 8 talks about pleadings, that they

23    be concise and direct.  And is this going -- is this going

24    beyond that?  In other words, one request is to strike them

25    from the Complaint, it does not exclude them down the line,

1  if they become relevant they then become subject to discovery

2  issues, motions, things like that.  What is your response to

3  that?

4      MS. STINNETT:  Well, Your Honor, I would like to

5  say that the exhibits to the Complaint I took great care in

6  making sure that I redacted very important information and

7  personal information.  I have no desire to expose these

8  ladies because they have moved on and they are in a current

9  job.  I have also taken great care, if you were to see the

10  entire Complaint it doesn't allege simply sexual harassment

11  and retaliation.

12      THE COURT:  Right.

13      MS. STINNETT:  It alleges other disability

14  discrimination, age discrimination, many other types of

15  discrimination that would actually --

16      THE COURT:  Your Complaint doesn't allege

17  disability?

18      MS. STINNETT:  Correct, that's why I redacted.

19      THE COURT:  Oh, some of theirs you're saying?

20      MS. STINNETT:  Oh, yes, Your Honor.  And if I

21  wanted to infuriate people or make the firm embarrassed I

22  would have included those things.  I did not include those

23  things.  They were very inflammatory, in my opinion, and had

24  nothing to do with my case.

25      THE COURT:  Right, but as it sits now these

1    exhibits are not essential in terms of Rule 8, in short, in

2    plain statement, they are surplusage, so with regard to them

3    what is your feeling as to their existence in the record as

4    we speak?

5        MS. STINNETT:  Well, Your Honor, one of the

6    exhibits, which would be Exhibit C, puts a timestamp, it says

7    1994 and it describes an event that was documented by the

8    firm in an evaluation of a secretary.  And I think it is very

9    important to my case to show that the firm was very aware of

10   what had happened, it was alleged that Defendant Cantor

11   unzipped her top in the hallway, and it also shows that there

12   were witnesses involved in that.  And I believe that the

13   story that goes behind it and the story that describes the

14   workplace harassment that has continued from that time

15   supports my harassment claims and it cites specific examples

16   of how other women who are in my protected group have also

17   suffered the workplace harassment at this particular firm.

18       THE COURT:  Okay.  With regard to the settlement

19   issue on that lawsuit, the Defendants have a significant

20   concern in terms of their business.  It seems to me like it

21   is put in there to relate to the question of whether it was

22   really valid or not to do the rifts as to whether they were

23   facing financial precariously -- precarious financial

24   situation.

25       MS. STINNETT:  Absolutely, Your Honor.  I would

**25**

1   like to just clarify that, if you actually read --

2          THE COURT:  It doesn't say the specifics?

3          MS. STINNETT:  It doesn't even say the word

4   settlement.  If you were to actually read number 100 and 101,

5   if you were to read that and if you did not know that there

6   was a settlement, which I never said the word settlement, you

7   would read that Brooks Kushman received this money on the

8   merits.  I had said that they won an appeal.  So I don't

9   understand why they are bringing in -- I did not say --

10  didn't breathe a word of settlement, so their issue, I think,

11  is moot on that.

12         THE COURT:  Okay.  The others I will call a

13  relation to the request relating to the paragraphs that deal

14  with Exhibits C, and then we get to 43 through 52, so that

15  again relates to -- when it says upon information and belief

16  is this based upon an exhibit, for example, Exhibit C?

17         MS. STINNETT:  No, Your Honor.  I actually spoke to

18  the female accuser in detail where she shared it with me and

19  other folks as well.

20         THE COURT:  And that deals with D and E as well?

21         MS. STINNETT:  Yes, Your Honor.

22         THE COURT:  Okay.  But they relate to these

23  complaints that were filed with the EEOC by C, D and E?

24         MS. STINNETT:  They were submitted to the EEOC.

25         THE COURT:  Okay.  And with regard to the matters

1    beginning with 100 to 101, basically your argument is that

2    they were -- they were contingency cases, period, and as to

3    how they got --

4           MS. STINNETT:  Yes, Your Honor.  I didn't talk

5    about settlement in those allegations.

6           THE COURT:  Okay.  Then as to get to the 105

7    through 114, that deals with the --

8           MS. STINNETT:  Right.

9           THE COURT:  -- EEOC Exhibit D, right?

10          MS. STINNETT:  Correct, D and E, and it basically

11   shows that once President Ernie Brooks passed away --

12          THE COURT:  Right, things changed.

13          MS. STINNETT:  Correct, Your Honor, that's what

14   that shows.

15          THE COURT:  Then we get to the question of the

16   settlement, and what is the relevance of 123?  If you can

17   turn to that.

18          MS. STINNETT:  Well, Your Honor, I don't say

19   anything in 123 or 124 about any type of an EEOC settlement.

20   If you read exactly what I wrote I say that they settled

21   claims, and not everyone filed an EEOC complaint, and not

22   everyone settled claims at the EEOC mediation, so I don't say

23   anything like that.  I'm simply trying to show that the firm

24   by settling claims has knowledge obviously of what occurred

25   and yet they still haven't fixed the situation or rectified

1    it in any way, and continues to go down the wrong path of

2    discrimination which relates back to my prayer for relief

3    where I ask for certain things to be done to help the folks

4    who are still at the firm.

5         THE COURT:  Okay.  Also were you in any way

6    involved in that lawsuit that settled?  I'm just wondering in

7    terms of --

8         MS. STINNETT:  No, I'm not, Your Honor.

9         THE COURT:  So you're not someone who was involved

10   and then --

11        MS. STINNETT:  I had nothing to do with the case.

12        THE COURT:  Right.  Okay.  Let me ask the question,

13   the Defendant is asking for various relief.  Do you have --

14   in responding, one thing is to strike certain paragraphs,

15   another is for a protective order, and the third is to seal

16   certain parts of the Complaint.  I would like to hear from

17   you with regard to your response as to objections, and if

18   there were to be any relief which you would feel that is

19   least harsh from your point of view.

20        MS. STINNETT:  Well, Your Honor, I would like to

21   say that they say in the first part of their request they

22   would like a protective order treating it as confidential and

23   inaccessible to the public the Complaint, the exhibits and

24   basically all other pleadings filed in this matter which, in

25   a way, is sort of sealing in my opinion --

1    THE COURT:  Well, then they are really saying just
2  the parts that Mr. Bretz mentioned.
3    MS. STINNETT:  Right, Your Honor.
4    THE COURT:  The paragraphs.
5    MS. STINNETT:  Right.  And then they would like to
6  strike certain paragraphs, and I think we spoke in detail
7  about the specific ones and my position on those.  If you
8  have any questions it is in my brief as well.  Striking the
9  exhibits, we spoke about that, but then alternately they
10  would like to request that the Court seal all court documents
11  in this matter, and I believe that there is a public interest
12  in making sure that this stays open, it is an interest that
13  has been centuries old that has said the right to public
14  documents is presumptively open, so I believe that it should
15  remain that way.
16    I believe the case that they cited to support their
17  position is Judge Rosen's Eastern District case, it is a
18  criminal case, and it has involved a public official, which
19  Defendant Cantor is not a public official, and it also wanted
20  to reveal non-party information, and everything in here is
21  for a party, it is directed exactly at the parties to this
22  case, so I don't believe that case has any applicability to
23  this motion at all.  That's really the only case that they
24  really are citing to try to show that they should be entitled
25  to any relief in this matter.

1       THE COURT:  That one and they mentioned Seattle

2  Times.

3       MS. STINNETT:  Okay, that must have been one that

4  they --

5       THE COURT:  Okay.  Let me hear from the Defendants.

6       MS. STINNETT:  Yes, Your Honor.

7       MR. BRETZ:  As to Ms. Stinnett's arguments that

8  this should be available to the public, what we are saying is

9  matters that are immaterial and do not support her

10  allegations should be stricken, especially when there is

11  evidence that it could cause irreparable harm or injury to

12  the Defendants.  We are not saying that the trial should be

13  shielded from the public.  We are not saying that the Court's

14  decisions should be shielded from the public view.  We are

15  saying that highly questionable, if not, in my opinion,

16  totally inadmissible evidence should not be paraded around

17  for what I think is a transparent purpose to damage and

18  humiliate individuals.  Ms. Stinnett can proceed with her

19  lawsuit.  That's not what we are trying to say.  If her

20  lawsuit stands on its own, we proceed to decisional events by

21  the Court and trial, that's fine.

22       She talks about this incident in 1994 which she

23  thinks was documented.  Note that this was nine years before

24  the Plaintiff ever worked at the firm.  That's the only

25  allegation anywhere in the 204 paragraphs that anyone ever

1    complained, as is required under the law, about harassing

2    behavior at the firm, and it occurred 16 years ago.

3            THE COURT:  That is in paragraph 94 --

4            MR. BRETZ:  Note that the -- -

5            THE COURT:  Just tell me the paragraph.

6            MR. BRETZ:  It is in 46, a female associate

7    complained.

8            THE COURT:  That's dealing with Exhibit C?

9            MR. BRETZ:  Yes, it appears -- the prior 42, 43, 44

10   deal with Exhibit C, correct.

11           THE COURT:  Correct.

12           MR. BRETZ:  The settlement of the lawsuit that is,

13   I believe, 100 and 101 we have attached to

14   Mr. LaFontaine's -- to our reply filed last night to

15   Mr. LaFontaine's declaration, the e-mails to the firm that

16   relate to -- they are redacted so the identifying information

17   is not there, but they talk about --

18           THE COURT:  Not ever.

19           MR. BRETZ:  Not ever talking about this case and

20   they quote the language from the settlement agreement, and

21   you will see on the e-mail that Ms. Stinnett is a recipient

22   of that e-mail.  That has no purpose in this lawsuit and it

23   would only jeopardize third parties' interests at this point.

24           We can argue later whether it comes in to a jury or

25   a judge trial down the road.

1       THE COURT:  With regard to the financial situation

2   at the firm at the time that they did the rifts?

3       MR. BRETZ:  Right, and note that the settlement was

4   nearly a year earlier.

5       THE COURT:  Let me ask you a question, because I

6   can't, you know, pull it up but I saw something -- there was

7   a huge article in Crain's about Brooks Kushman relating, this

8   is like years ago, and about some kind of huge settlement,

9   end of the year settlement, stuff like that, and wowzer, here

10  we are, and maybe you can talk to Mr. LaFontaine for a minute

11  and just let me know about his recollection of that because I

12  think there was not just a huge story but then an ad from

13  Brooks Kushman in Crain's, this is probably three, four,

14  five years ago.  Why don't you go talk to him for a minute

15  and come back and --

16          (An off-the-record discussion was held at

17           10:49 a.m.)

18      THE COURT:  I don't think it mentioned the parties

19  in the story, and it doesn't mention the parties here.

20      MR. BRETZ:  Correct, and Mr. LaFontaine said it

21  said nothing about the settlement, it talked about the suit

22  and the complexity of the suit, but not the terms of the

23  settlement or amounts received.

24      THE COURT:  It talked about a huge settlement, it

25  didn't list the amounts.

SEALED PROCEEDINGS

1        MR. LaFONTAINE:  It did not list any numbers.

2        THE COURT:  No, it didn't list any numbers.

3        MR. LaFONTAINE:  Not that I recall.  We are very

4   concerned about numbers.

5        THE COURT:  I don't recall any numbers but there

6   was something relating to that, okay.  Then let me ask what

7   number is the settlement?

8        MR. BRETZ:  I think it is 100 and 101, I believe,

9   yes.

10       THE COURT:  100 and 101.  Let me ask Plaintiff,

11  does she have a problem in terms of reformulating to say that

12  Defendants won a contingency case with a large amount -- of a

13  large sum?

14       MS. STINNETT:  Your Honor, I would rather say that

15  maybe -- first of all, I didn't say what the actual numbers

16  were but I understand how it may read, but I would basically

17  say that I would be amenable to rewording it to say that in

18  the year 2008 Brooks Kushman had receivables of over

19  50 million.  It doesn't talk about the case, but it does show

20  what I want to show, which is the fact that they received a

21  lot of money in 2008, and it shows that basically saying that

22  they were in financial distress was a pretext to the illegal

23  terminations.

24       THE COURT:  Is that something that's -- why don't

25  you go talk to Mr. LaFontaine and then come back.

1          (An off-the-record discussion was held at

2     10:52 a.m.)

3          MR. BRETZ:  The concern, Your Honor, is in

4     reference to the numbers.  The firm does not handle many

5     contingency cases so if we put numbers out there it is easy

6     to connect the dots and draw the line.

7          THE COURT:  So let me ask the Plaintiff, and you

8     can stand there and she can just respond, if they were

9     rewritten to say they won a large contingency case and they

10    were, you know, well flush with income, is that --

11         MS. STINNETT:  I would prefer to have the number

12    there.  I think well flushed doesn't give you the scope of

13    the amount.

14         THE COURT:  It could come out at a later point, I'm

15    just talking for the case.

16         MS. STINNETT:  Right, Your Honor.  They haven't

17    showed me any type of an agreement where they said that the

18    amount they received was confidential.  I know that the

19    amount between the parties may be, I haven't even seen that,

20    but they are saying that the amount they took from the case.

21    No one knows what percentage they were supposed to get from

22    the case.

23         THE COURT:  We can deal with that during discovery.

24         MS. STINNETT:  Okay.

25         THE COURT:  Okay.  Go ahead, Mr. Bretz.

1          MR. BRETZ:  Yes, just a few last points, Your

2     Honor.  The exhibits attached by these other individuals --

3          THE COURT:  C, D and E?

4          MR. BRETZ:  C, D and E, yes, Plaintiff says that

5     this shows the firm had knowledge of these matters.  I think

6     she's conflating ideas.  The firm had knowledge of them when

7     they were filed at the EEOC after Plaintiff's separation.

8     They were never brought to the firm's attention by Plaintiff

9     or the individuals.  These individuals all went down to the

10    EEOC and filed charges of a variety of stripes and flavors,

11    and some of which related to events that occurred in the

12    1990s.  That's the knowledge she is now talking about.

13         Secondly, we have never had the opportunity to

14    cross-examine these individuals as to the veracity or

15    accuracy or accuracy --

16         THE COURT:  Well, that's --

17         MR. BRETZ:  Understood.

18         THE COURT:  -- in every case.

19         MR. BRETZ:  Understood, but they are now being

20    offered as a Complaint, and that's the point I'm trying to

21    make.  Whether we can fight about it as evidence down the

22    road is a separate issue, that's where I'm saying that's

23    where Rule 26 comes into play, whether these even should meet

24    the standards to be admissible.  She talks about the

25    settlements at the EEOC in the Complaint, Rule 408 is very

SEALED PROCEEDINGS

1    clear that that's not admissible.  In addition, the EEOC

2    process that we agreed to and signed an agreement to

3    participate in, the whole purpose of the EEOC is to

4    conciliate and resolve issues, and we did that with all of

5    these individuals.  That should not come into evidence nor

6    should it be part of a pleading.  It does not bear in any

7    sense on her -- on the value or veracity of her allegations.

8         And, finally, her attempt to distinguish

9    Judge Rosen's case I think fails because, first of all, it

10   isn't a criminal case.

11        THE COURT:  Right, it isn't but one of the major

12   boldface things in Judge Rosen's opinion is it deals with

13   non-parties.

14        MR. BRETZ:  As does this case, as do the very

15   exhibits --

16        THE COURT:  When you say as does this case, the

17   party that you are representing is not a non-party.

18        MR. BRETZ:  Correct.

19        THE COURT:  And that is the essence of -- this is

20   not a non-party complaining about it, this is a party

21   complaining about it, the information, so --

22        MR. BRETZ:  True, but Judge Rosen was protecting

23   the deposition of the Attorney General and we don't know what

24   else.  He said there were five or six orders to seal and a

25   variety of matters that frankly we don't know about, but my

SEALED PROCEEDINGS

1   point here is the primary thrust of our motion deals with

2   these third parties who are not parties to this case and

3   their allegations that have no relation to her claim, and I

4   think that that sentiment, which is among many of

5   Judge Rosen's opinions, applies here, that principle applies

6   here.

7        THE COURT:  Okay.  Why don't you have a seat and

8   let me proceed with some rulings so the case can proceed.

9        With regard to the Exhibits C, D and E, I believe

10  that they should be stricken from the Complaint, and I

11  believe that Rule 8 which requires a short, plain statement

12  of the grounds, and they are in the Complaint, I think this

13  is like additional evidence that is not appropriate under

14  Rule 8 nor be given the nature of it, and I understand the

15  Plaintiff said scandalous behavior creates scandalous matter,

16  but on the other hand Rule 12 F talks about on a motion to

17  strike scandalous matter, I'm not saying that this is

18  scandalous, scandalous has the appearance of saying it

19  doesn't belong in the case, we will see that down the line.

20       I'm just saying that under Rule 8 to go beyond the

21  matters pleaded in the Complaint that it is inappropriate to

22  attach matters which could be 404(B), similar acts or could

23  be part of a hostile environment under the Amtrak National

24  Railroad Passenger case.  I don't think you attach

25  evidentiary material to a Complaint, it is not an appropriate

1    pleading, and I think that the Plaintiff has pled a pervasive

2    environment so that is not an appropriate attachment to the

3    Complaint, so those three will be stricken from the Complaint

4    at this stage of the proceeding.

5          With regard to the settlement, which is 100 and

6    102 -- through 102, I think that the amounts given that it

7    was a confidential settlement, that the Plaintiff was at the

8    firm at that time, that obviously it is relevant to her claim

9    at a later time, that the rift from her point of view is not

10   justifiable, but I think the amounts are not appropriate in a

11   Complaint given that it was done on a confidential basis, and

12   so I'm going to order that the amounts be stricken from 100

13   to 102 and let Plaintiff submit a new Complaint with regard

14   to 100 and 101 that eliminates those amounts.  Obviously it

15   is something that this Complaint will remain under seal so if

16   at a later time the Defendants says under Ashcroft vs. Iqbal

17   that she didn't plead specific enough we will have the

18   original Complaint to allow that to continue on terms of --

19   in terms of specificity.

20         With regard to the statements in the attachments

21   dealing with -- insofar as the Complaint with regards to 29

22   through 32, I'm not going to strike that.  There wasn't an

23   initial request, and I'm not going to strike that at this

24   time.

25         With regard to paragraphs -- and wherever it

1    mentions Exhibit C, I'm asking the Plaintiff in terms of

2    reformulating it, and then showing it to the Defendants based

3    on my rulings, that to get rid of the term Exhibit C in all

4    the paragraphs because there will be no Exhibit C.

5          With regard to the further information, given the

6    fact that this occurred in 1994 I'm not excluding it from the

7    case, but in terms of the Complaint, and this is a matter

8    that relates to information showing a pervasive atmosphere

9    and also I think overlaying the Court's rulings is the fact

10   that this information is out on 360, the website, and given

11   the Sixth Circuit's statements with regard to the standards

12   in cases that -- both in Brown and Williamson and in the

13   Knoxville case, which came out about six months after Brown

14   and Williamson, that only the most compelling reasons can

15   justify non-disclosure of judicial records, that I think that

16   I am not going to strike 43 to 52.  I'm going to strike the

17   attachments as I have already indicated but I believe that

18   the Sixth Circuit precedent requires that that not be

19   stricken.

20         100 to 101, and because it already is out, I think

21   that there is less of a justification to support the drastic

22   remedy of striking or sealing from the public.  100, 101 we

23   have dealt with.

24         106, because it is based upon the Exhibit D and it

25   quotes that, I'm going to strike 106.  I believe that should

SEALED PROCEEDINGS

1    be stricken.

2          I'm not going to strike 107.

3          Also 114, again, because it quotes from Exhibit E

4    and Exhibit E has been stricken I'm going to strike 106 and

5    114.

6          With regard to the settlement and the appearances

7    before the EEOC, I think that that is like collateral and

8    therefore it is not a necessary and appropriate part of the

9    Complaint under Rule 8 so I'm going to strike 123 through

10   125.  That is the ruling of the Court.

11         Do you want to come up with a new Complaint with

12   those changes, and I just want to note for the record that

13   this was done in open court and so anybody can and could be

14   here, and that's the ruling of the Court.

15         When you draft what we will call a Second Complaint

16   we will keep the first under seal in the record in case it is

17   necessary for the Plaintiff to argue with regard to certain

18   matters that may be raised that, you know, you didn't plead

19   this or you didn't plead that, so that will protect you.

20         Why don't you redraft the Complaint based upon what

21   I just stated, give a copy to Mr. Bretz and let him look at

22   it and see that it confirms with the Court's ruling, and we

23   will proceed with the case.

24         Have a happy New Year.

25         MR. BRETZ:  Your Honor, one last housekeeping

SEALED PROCEEDINGS

40

```
1   matter.  I will agree to accept service of the Amended

2   Complaint.

3            THE COURT:  Great.

4            MR. BRETZ:  Are we going to call it amended or call

5   it something different?

6            THE COURT:  Call it a Second Complaint.

7            MR. BRETZ:  Second Complaint.

8            THE COURT:  Okay.  Thank you all.

9            (Proceedings concluded at 11:07 a.m.)

10                     —    —    —

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

SEALED PROCEEDINGS

1

2                          *CERTIFICATION*

3

4            I, Robert L. Smith, Official Court Reporter of

5    the United States District Court, Eastern District of

6    Michigan, do hereby certify that the foregoing pages comprise

7    a full, true and correct transcript taken in the matter of

8    ANN MARIE STINNETT vs. BROOKS KUSHMAN, P.C. & MARK A. CANTOR,

9    Case No. 10-15043, on Tuesday, December 28, 2010.

10

11                          *s/Robert L. Smith*
                            Robert L. Smith, CSR 5098
12                          Federal Official Court Reporter
                            United States District Court
13                          Eastern District of Michigan

14

15

16    Date:   03/04/2011

17    Detroit, Michigan

18

19

20

21

22

23

24

25